## GRADY MASON v. THE STATE.

### No. 5131.   Decided April 30, 1919.

1.—Murder—Manslaughter—Continuance—Want of Diligence.

When an application for continuance is because of absent witnesses, it must be shown that process was promptly procured, and what was done with same, to whom, and when same was delivered, and if to another county, the manner and time of its transmission must be shown, and where this did not appear there was no error in overruling the application for continuance.

2.—Same—Dying Declaration—Condition of the Deceased.

Where, upon trial of murder, defendant contended that the deceased did not know what he was talking about when he made the dying declaration, there was no error in admitting testimony that the deceased prior to his death spoke about the condition of his wife and told the witness to look after his family, it appearing that the said wife was pregnant, and the deceased was aware of his physical condition and did not believe he could live.

3.—Same—Evidence—Rebuttal—Test of Witness' Opportunity.

Where, upon trial of murder and conviction of manslaughter, the defense contended that the wife of the deceased could not have observed and seen the difficulty as she testified she did, there was no error in admitting testimony in rebuttal that a test was made on the ground to show that said wife of the deceased could have observed and seen the difficulty as testified to by her. Following Clark v. State, 38 Texas Crim. Rep., 30, and other cases. Distinguishing Harris v. State, 62 Texas Crim. Rep., 235, 137 S. W. Rep., 375, and other cases.

**4.—Charge of Court—Assault to Murder—Manslaughter.**

Where defendant was convicted of manslaughter, there was no error in failing to submit a charge on assault to murder.

**5.—Charge of Court—Adequate Cause—Rule Stated—Harmless Error.**

Where defendant was convicted of manslaughter, there was no error in not submitting in the court's charge all the facts as to adequate cause, although the charge should have done so, yet the error was harmless.

**6.—Same—Aggravated Assault—Self-Defense—Provoking Difficulty—Charge of Court.**

Where, upon conviction of manslaughter, the evidence raised the issue of provoking the difficulty there was no error in the court's charge on aggravated assault in submitting this phase of the case.

**7.—Aggravated Assault—Charge of Court.**

Where, upon conviction of manslaughter, defendant claimed that the charge of the court authorized a conviction of aggravated assault when the testimony raised self-defense and justification, there was no error as the defendant was not convicted of aggravated assault.

**8.—Evidence—Charge of Court—Manslaughter.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that the instrument used was a wooden sucker rod with an iron piece in the end, the court in his charge to the jury should have submitted both the deadly character of the instrument and the fatal nature of the blow and should have given the substance of Article 1149 P. C., and a failure to do so was reversible error. Following Thompson v. State, 24 Texas Crim. App., 383 and other cases.

Appeal from the District Court of Floyd. Tried below before the Hon. R. C. Joiner.

Appeal from a conviction of manslaughter; penalty two years imprisonment in the penitentiary.

The difficulty arose about a difference between deceased on the one hand and defendant and his father on the other about the right of possession of a certain stalk field purchased by the defendant's father; tearing down cross fences, etc.

The State claims that the deceased was accosted by the defendant and his father, and that he was struck on the head with a piece of sucker rod coupling, from the result of which he died a few days thereafter. The defendant's theory was that he was accosted by the deceased, cursed and abused, and attacked with a hammer, whereupon he picked up a piece of sucker rod, knocked the hammer out of the hand of the deceased and may have hit him on the head, and that in a scuffle they fell against the iron hub of a wagon wheel on which the deceased was riding; that the wound which the State claims caused the deceased's death, was either caused by the lick from the sucker rod or from the deceased falling upon the wagon wheel, and that the deceased may have died of blood poisoning or improper treatment.

The theory of the State was that the defendant provoked the difficulty and that the deceased died of the wound inflicted upon him.

*B. B. Greenwood, Kenneth Bain, Frank Ford, Kinder & Russel, and A. B. Martin,* for appellant. On question, of continuance: Roquemore v. State, 54 Texas Crim. Rep., 592, 114 S. W. Rep., 140.

On question of dying declaration: Barber v. State, 16 Texas Crim. App., 369; Rice v. State, 103 S. W. Rep., 1156.

On question of experimental test: Harris v. State, 62 Texas Crim. Rep., 235, 137 Rep., 373; Faulkner v. State, 65 id., 1093.

On question of charge of court in failing to submit assault to murder; Morgan v. State, 16 Texas Crim. App., 593; Noble v. State, 54 Texas Crim. Rep., 436, 113 S. W. Rep., 281; Ex Parte Pettis, 60 Texas Crim. Rep., 288, 131 S. W. Rep., 1081.

On question of adequate cause: Orman v. State, 24 Texas Crim. App. 495; Barnes v. State, 61 Texas Crim. Rep., 37; Burton v. State, 77 Texas Crim. Rep., 314, 178 Rep., 334; Wheeler v. State, 54 Texas Crim. Rep., 47.

On question on aggravated assault; Winters v. State, 37 Texas Crim. Rep., 582; Irving v. State, 67 Texas Crim. Rep., 588, 150 S. W. Rep., 611.

Upon question of intent to kill and deadly weapon: Johnson v. State, 60 S. W. Rep., 48; Danforth v. State, 69 id., 159; Washington v. State, 53 Texas Crim. Rep., 480, 110 S. W. Rep., 751; Crow v. State, 55 Texas Crim. Rep., 200, 116 S. W. Rep., 52; Betts v. State, 60 Texas Crim. Rep., 631, 133 S. W. Rep., 251.

*E. B. Hendricks,* Assistant Attorney General, and *A. J. Fires,* for State.—On question on diligence in application for continuance: Browning v. State, 9 S. W. Rep., 770; Pruitt v. State, 16 id., 773; Stacy v. State, 77 Texas Crim. Rep., 52, 177 S. W. Rep., 114; Thomas v. State, 80 Texas Crim. Rep., 216, 189 S. W. Rep., 139.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Floyd County for the offense of manslaughter and his punishment fixed at confinement in the penitentiary for a period of two years.

Appellant was indicted on March 6, 1918, for the murder of Elder Morris, was arrested on the same day, and his case shortly thereafter set for trial on March 25th. On March 9th he caused two subpoenas to be issued, one to Potter County for J. J. Gordon, and one to Wise County for Y. M. Mason; on the 19th of said month he also had a subpoena issued to Bexar County for Hubert Bartlett. None of said witnesses were served with process and none were present when the case was called for trial, and a continuance was asked on account of

their absence. The application does not state what said Bartlett would testify. Both Gordon and Mason were stated in said application, to be out of the State at the time of making of said application. When or how the information as to their absence reached appellant, is not stated, nor is it shown when said subpœnas were sent to the respective counties to which issued; nor is it shown by whom the same were sent, if at all. Said subpœnas were not attached or in evidenc, nor accounted for in any way. No showing is made as to when said witnesses left the State, nor that they had been, or were recently in the counties to which the subpœnas were issued.

Authorities without number might be cited to sustain the rulings of this court to the effect that when an application is because of absent witnesses, it must be shown that process was promptly procured, and what was done with same, to whom, and when same was delivered, and if to another county, the manner and time of its transmission must be shown, etc. For authorities on these points, see. article 608, Vernon's C. C. P. and citations. There was no error in overruling said application for a continuance.

The brother of deceased testified to a declaration made by the deceased prior to his death, a part of which statement was ás follows: "He told me about the condition of his wife. He told me a few things. He wanted me to look after his family." This was objected to by appellant as inflammatory, prejudicial, immaterial and hearsay. The court approved the bill with the explanation that appellant was contending at the time the entire statement was made, of which that quoted and objected to was only a part, that deceased was in a semi-comatose condition and did not realize what he was saying. The trial court was of opinion that the circumstances surrounding deceased at the time were of such character as that said quoted statement showed, and tended to show, that he fully realized the condition of his wife and family, and therefore tended to show his mental condition in making the entire statement. It appears from the record that at the time of this trial, a few months after the killing, that the wife of the deceased was placed on the witness stand and that her pregnant condition was plainly visible to the jury. The evidence objected to was not inflammatory, and in our opinion was admissible as rebutting appellant's contention that the deceased did not know what he was talking about. The statement in full, clearly showed that the deceased was aware of his physical condition and did not believe he could live, and the same came clearly within our rules as to dying declarations.

Objection was made to the testimony of the State witness Gound, who went with the wife of deceased and other parties to the scene of the killing afterward and testified that from the place where Mrs. Morris located the difficulty to Morris' home and premises were plainly visible and that from the Morris home and yard, the place, near

17—85 T. C. R.

the appellant's home, where Mrs. Morris had located the difficulty, was plainly visible. The court's explanation of this bill shows that appellant had testified that after hearing Mrs. Morris state on the examining trial that she was in her yard and saw all the fatal difficulty, that he then went to the place of the difficulty and from there he observed that none of the Morris premises, but the top of the house, were visible. The trial court was of the opinion that the test made by the witness Gound was admissible to meet this testimony of appellant. It appears that the test was made under the direction of an eyewitness to the difficulty and was made at about the same time of day as that of the killing, and, we think, the admission of the same was not objectionable. Schauer v. State, 60 S. W. Rep., 251; Coffman v. State, 73 Texas Crim. Rep., 295; Brown v. State, 74 Texas Crim. Rep., 356, 169 S. W. Rep., 437; Wilson v. State, 36 S. W. Rep., 587; Clark v. State, 38 Texas Crim. Rep. 30.

We find nothing in the Harris case, 62 Texas Crim. Rep., 235, 137 S. W. Rep., 375 or in the Faulkner case, 43 Texas Crim. Rep., 311, 65 S. W. Rep., 1093, cited by appellant, which holds to the contrary.

Complaint is made because the trial court failed to charge on assault to murder. The ground of said complaint in the application is that the wound inflicted upon deceased was not necessarily fatal, nor was the deceased given proper medical treatment. Appellant was only convicted of manslaughter, which clearly showed the jury's disagreement with any theory that what he did was with malice aforethought, which is an essential element of assault to murder. This being true, we wholly fail to see what benefit could have accrued to the appellant from the charge to the jury on assault to murder, or how he could be injured by a failure to so charge. In the cases cited by appellant in support of this contention, the convictions were had of grades of homicide higher than manslaughter, so that a reason existed for holding that it was erroneous not to charge upon assault to murder, but such is not the case here.

It was also insisted that the trial court erred in his charge on manslaughter in limiting the jury's consideration to two facts as adequate causes, and that the jury should have been given the right to consider not only what occurred on the day of the homicide, but also what preceded that day in order to determine whether there existed sufficient and adequate cause to reduce the homicide to manslaughter. This is set forth in appellant's sixth assignment of error. We are in accord with the law as contended for by appellant on this point, but the jury having found the appellant guilty of only manslaughter and having assessed the lowest punishment therefor, we must confess that we do not see just how appellant could have benefitted if a dozen adequate causes had been submitted by the court, or if the court had permitted them to consider everything that had taken place between the parties for two years past. Manslaughter is

manslaughter, whether arrived at solely because of one insulting
epithet, or as a result of a long course of aggravation. The charge
seems not to allow as much latitude in regard to causes that the jury
are permitted to consider, as is now allowed by the authorities, but
in view of the verdict, the error is wholly harmless.

We do not think the court's charge on aggravated assault open
to the criticism that the same should have been given without any
reference to provoking the difficulty and free from any charge on the
question of self-defense. Provoking the difficulty appears to have
been raised by the evidence and in such case is applicable to each
grade of the assault, if any, and it was proper for the court to tell
the jury that if appellant struck and killed deceased without in-
tention to kill, and under sudden passion, and with a weapon not
reasonably calculated to inflict death or serious bodily injury, and
that the same occurred under circumstances in which the appellant
had not provoked the difficulty, and was not justified, then he would
be guilty of no higher offense than aggravated assault.

Complaint is also made of paragraph 26½ of the court's charge
because same authorizes a conviction of aggravated assault when the
testimony raises self-defense and justification. A sufficient reply to
this would be that appellant was not convicted of aggravated as-
sault, in which event only this could have been harmful, if erroneous.

An inspection of the record shows that the testimony of the ap-
pellant while on the witness stand raised the issue of whether he
acted under the immediate influence of sudden passion. The truth
or falsity of such testimony is not for the trial court or this court
to pass upon, but is a question for the jury under ap-
propriate instructions. Appellant swore that the deceased called
him out to where he was and used opprobrious epithets to him and
jumped out of his wagon and started at him with a hammer. He
says: "I was excited during the difficulty and did not know really
anything that passed. I was excited; I never had a fight with a
man before." None of this testimony may be true, but that fact
would not justify a failure to give any charge on the law applicable
to such testimony. Our statute, article 1149, P. C., is as follows:
"Where a homicide occurs under the influence of sudden passion,
but by the use of means not in their nature calculated to produce
death, the person killing is not deemed guilty of the homicide, un-
less it appear that there was an intention to kill, but the party from
whose act the death resulted may be prosecuted for and convicted
of any grade of assault and battery."

The court's charge applying the law of manslaughter is as follows:
"You are instructed that if you find and believe from the evidence,
beyond a reasonable doubt, that the defendant did strike and kill
the deceased, but at said time had no intention to kill the deceased,
and that the defendant had not provoked the difficulty that resulted

in the death of the deceased, or by his own wrongful acts, had produced the necessity for taking the life of the deceased, and that in making the assault upon the deceased he was not justifiable as hereinbefore explained to you, then, in that event, he would not be guilty of a higher offense than that of aggravated assault.''

This charge of the court omits two important factors which might, if the jury believed them to exist, reduce the offense to aggravated assault, to-wit: the use of a weapon not deadly in character; and the fact that the blow might have resulted from uncontrollable passion or excitement. Failure of the court to charge the law applicale to a striking under sudden passion and with an instrument not calculated to produce death, was excepted to and a special charge asked containing two said omitted elements which might have reduced the offense to aggravated assault. This was sufficient to have called the court's attention to the error. The evidence showed that the instrument used was a wooden sucker rod with an iron piece in the end. Both questions, to-wit, the deadly character of the instrument and the fatal nature of the blow, were raised by the evidence as well as the mental condition of the appellant at the time of the difficulty, and we think the court should have given the substance of article 1149 P. C. to the jury. Thompson v. State, 24 Texas Crim App., 383; Johnson v. State, 42 Texas Crim. Rep., 377, 60 S. W. Rep., 48; Poole v. State, 62 Texas Crim. Rep., 360, 137 S. W. Rep., 660; Danforth v. State, 44 Texas Crim. Rep., 105, 69 S. W. Rep., 159; Fitch v. State, 37 Texas Crim. Rep., 500. Reeves v. State, 74 Texas Crim. Rep., 503.

For the error indicated, the judgment of the lower court is reversed and the cause remanded for another trial.

*Reversed and remanded.*