## ALBERT HAMMER v. THE STATE.

No. 9408.   Delivered November 11, 1925.

### 1.—Theft of Cattle—Confession of Accused—Jury to Pass on Admissibility.

Where, on a trial for theft of cattle, the district attorney testified that a confession of appellant introduced in evidence was made after the district attorney had told appellant that it would be better for him to make a clean breast of it, and tell the truth; that juries and courts and everybody took a more favorable view of a fellow's position if he told the truth, and that it usually had a beneficial effect on him and his situation to do so.   Under this testimony the voluntary character of the confession should have been submitted to the jury under appropriate instructions for their determination as to its admissibility.

### 2.—Same—Confession of Accused—When Admissible—Rule Stated.

In order to render a confession admissible, it must be freely made, and without compulsion or persuasion, not induced by promises creating hope of benefit, or influence applied, leading the defendant to believe his condition would be better by making such confession.   See Gallagher v. State, 24 S. W. 288.

### 3.—Same—Continued.

If the influence applied was such as to make the defendant believe his condition would be better, by making a confession, true or false, then it would not be voluntary and should be excluded, but if not the confession is admissible. The correlative fact must appear that the influence emanated from and was sanctioned by some one in authority.   Tested by these rules, the confession admitted in the instant case should have been excluded.   Following Thompson v. State, 19 Tex. Crim. App. 616; Searcy v. State, 28 Tex. Crim. App. 514; Wharton on Crim. Ev. Sec. 675.

### 4.—Same—Confession of Defendant—Must be Voluntary—Evidence Improperly Excluded.

Where appellant offered his father as a witness touching the voluntary character of his confession, it was error to retire the jury, and hear said witness in its absence.   The issue as to the voluntary character of a confession, becomes a jury question under our practice, and we see no reason for the jury's retirement in order for the court to ascertain whether the testimony of the witness could raise such issue.

### 5.—Same—Evidence—Withdrawing Question—Does Not Cure Injury.

Where, on a trial for theft of cattle, private prosecutor on cross-examination of the father of appellant asked him if it was not a fact that his son (appellant) refused to testify against Bee Burns with respect to killing of the Stanley Poling cattle, and upon objection made by appellant, the question was withdrawn.   The question should not have been asked.   Appellant was jointly indicted with Bee Burns for the theft of the Poling cattle. No obligation rested upon him to testify for the State against Burns, and it was prejudicial to direct the attention of the jury to a matter hurtful, and obviously incompetent.

Appeal from the District Court of Deaf Smith County. Tried below before the Hon. Reese Tatum, Judge.

Appeal from a conviction of theft of cattle, penalty two years in the penitentiary.

The opinion states the case.

*Umphries & Clayton,* for appellant.

*Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction in the District Court of Deaf Smith County of cattle theft; penalty, two years in the penitentiary.

In this case the State relies largely upon the confession of the appellant. The district attorney took the confession and testified to the predicate offered showing its admissibility. On cross-examination he said appellant was brought to his office by the sheriff and at first did not seem to be talkative. The sheriff and one Davis, an inspector for the Cattle Raisers' Association, told witness appellant was ready to make a statement. The witness further said: "I probably told him that it would be the right thing, and probably, in the long run, would be the best thing to do, to tell the truth about it." Asked as to what he meant by "the best thing for him," witness, among other things, said:

"That I thought it would be a good thing, and be doing the right thing to make a clean breast of it, and that I didn't figure, myself, that he was, originally, the moving spirit in it, and that it would be better, and the right thing to do it, because everybody usually took a little bit more favorable view as to a fellow's position if he came clean and told the truth; that juries and courts and court officials, and everybody, that if a fellow was trying to come clean and turn about and do the right thing, it usually had a beneficial effect on him and his situation. That was the substance; I couldn't say the exact language, but that is about as near as I can recall the language.

"As to my conveying to him the idea that he would profit as to the charge that was then pending against him by making this statement, I told him, in substance, what I stated a moment ago, and I think he understood what I meant by that language. I have undertaken to give the language I used in talking to him, but of course I couldn't recall the exact words."

. The court's charge did not submit the issue of the voluntary character of the confession to the jury. That this issue was thus withdrawn from the jury's consideration was made the subject of an exception to the charge, and various special charges presenting said issue from different angles were requested, all of which were refused. We think the issue should have been submitted. In Gallagher v. State, 24 S. W. Rep. 288, this court, speaking through Judge Davidson, said:

"In order to render a confession admissible it must be freely made, and without compulsion or persuasion, not induced by promise creating hope of benefit or influences applied, leading the defendant to believe his condition would be better by making such confession."

Searcy v. State, 28 Texas Crim. App. 514, quotes with approval Sec. 673 of Wharton's Criminal Evidence, as follows:

"If the influence applied was such as to make the defendant believe his condition would be better by making a confession, true or false, this excludes; but if not, the confession is admissible."

The same appears in Thompson v. State, 19 Texas Crim. App. 616. In these and other authorities it is held also that the correlative fact must appear that the influence emanated from and was sanctioned by some one in authority, as was the case here. Under the facts it seems to us that the confession was not admissible.

Bill No. 17 has given us concern. It shows that after the State had put on the witness stand District Attorney Braly to lay a predicate for the admission of appellant's confession, appellant objected to the confession and offered his father M. L. Hammer as a witness to show that he was induced to make such confession by statements of the sheriff and district attorney. Over appellant's objection the jury were retired when this witness was offered, the trial judge stating in his qualification to the bill that he excused the jury from the box that he might "hear the testimony to ascertain whether same would present an issue to go to the jury." The bill further shows without dispute that in the absence of the jury the witness swore that the sheriff told him that he wanted him to go and talk to appellant in regard to his acknowledging the theft, and that the sheriff said provided appellant "came clean" he was going to do what was in his power to free him. Witness also swore, regarding his conversation with the district attorney:

"When I talked to Mr. Braly, he told me that Albert had his neck bowed some way, and he wouldn't give him any satisfaction about what he was going to do, and wanted me to go and talk to him and try to influence him to get on the right track and do what is right about it, and that they intended to favor him in every way they could, and I told the defendant what they said and got him to make the confession."

On cross-examination by the State the witness testified:

"Mr. Purcell, the sheriff, told me that he would do everything he could if Albert would come through and make a confession about the matter and would see that Albert went free."

The bill then recites that the jury were returned and all objections made by appellant to the confession were overruled, to which appellant excepted, and the confession was read. The bill also states that appellant objected to the retirement of the jury and insisted that they should have evidence of this witness; that after the jury were returned to the box appellant sought to have the testimony of said witness as taken by the court stenographer in the absence of the jury, read to them— which request, upon objection by the State, was denied. The bill then sets out that the appellant's objections to the confession were overruled, and the court declined to submit to the jury the issue as to the voluntary character of such confession, to all of which an exception was taken. This bill is qualified by the statement that after the court heard the testimony of Hammer in the absence of the jury, they were recalled and returned to the jury box and defendant was permitted to offer said witness to prove certain statements made by the district attorney and the sheriff—and that the witness testified but did not testify that said statements were made to witness in appellant's presence, nor that same were ever communicated to appellant. We confess to being in confusion ourselves when we read this bill, and this led us to look to the statement of facts to see what the witness did testify when the jury were recalled; but we found the record bare of any showing that the witness was then recalled or at that time gave any testimony at all in the presence of the jury. The first appearance of this witness, as far as the record reveals, other than the explanation of the court appended to this bill of exceptions, is when the witness is put on the stand in the development of the appellant's case. This leads us to conclude that the witness was not put upon the stand upon the recall of the jury, nor before the court overruled appellant's objection to the confession. The court manifestly did not submit to the jury the issue of

the voluntary character of the confession. That appellant sought to have before the jury the testimony of said witness as heard by the court in the absence of the jury, is manifested by his request that the stenographer's report of same be read to the jury upon their return to the box. That the testimony of the witness was admissible at that time and pertinent to go to the jury upon the issue of the voluntary character of the confession, is plain, and we perceive no reason why same should not have been heard by the jury in the first instance. The issue as to the voluntary character of the confession, when disputed in testimony, becomes a jury question under our practice, and we see nothing calling for the jury's retirement in order for the court to ascertain whether the testimony of the witness could raise such issue. We are not satisfied that the action of the court was not misleading to the appellant and that the hearing of the testimony in the absence of the jury and the apparent assumption by the court of the right to then pass upon it and to overrule appellant's objection to the confession, may have inadvertently caused appellant not to then reintroduce said witness. We have discussed this at some length so that it will not likely occur upon another trial.

Another matter: While appellant's father was on the stand in appellant's behalf he was asked by an attorney assisting the State: "Now, Mr. Hammer, it is true, is it not, that your son refused to testify against Bee Burns?" To this appellant objected, among other reasons, on the ground that it was highly prejudicial, and the court said that he doubted its admissibility. Thereupon said attorney asked the court stenographer to repeat the question, which was done, and then the attorney added to same the following: "With respect to the killing of the Stanley Poling cattle." Appellant's counsel then renewed his objection, and at the close of his statement thereof the private prosecutor said: "In view of the statement of the counsel, the question is now withdrawn." Such question or questions should not have been asked. Bee Burns and appellant were indicted for the theft of the Poling cattle. No obligation rested upon appellant to testify for the State against Burns, and it was prejudicial to direct the attention of the jury to a matter hurtful and obviously incompetent. Proof that appellant did not so testify could not be admissible under any theory of this case.

For the errors mentioned the judgment will be reversed and the cause remanded.

*Reversed and remanded.*