### BEN H. COLLINS V. THE STATE.

No. 10957.   Delivered October 26, 1927.

**1.—Murder—Charge of Court—Limiting Testimony—Not Necessary.**

Where, on a trial for murder, the evidence discloses the killing of deceased during an altercation between appellant and deceased Howard and one Fisher, who it was shown was also assaulted, there was no error in the court's failure to limit the effect of the evidence as to the assault on Fisher. It was a part of the very transaction for which appellant was on trial, and being a part of the res gestae, would not have to be limited. See Jenkins v. State, 128 S. W. 1113, and other cases cited.

**2.—Same—Charge of Court—On Malice—Held Correct.**

Appellant excepted to the court's charge on malice, which was worded as follows: "The term 'malice' in its legal sense means the intentional doing of a wrongful act to another without legal justification. It is a state or condition of the mind showing a heart regardless of social duty, and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken." The first sentence of this charge is subject to the criticisms urged, but the last sentence contains a correct definition of malice aforethought which has been used and followed in this state since the case of Harris v. State, 8 Tex. Crim. App. 109.

**3.—Same—Charge of Court—Approved Charge.**

Where, on a trial for murder, when manslaughter is an issue in the case, a more appropriate charge on malice is found in Hays v. State, 14 Tex. Crim. App. 330, by Judge White.

**4.—Same—Charge of Court—Specific Intent to Kill—Improperly Omitted.**

Under the facts in this case it was error for the trial court to fail to instruct the jury that "the instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the defendant; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." See Art. 1261 P. C.

**5.—Same—Continued.**

Where the weapon is per se, deadly, the law will presume an intent to kill, and it is not necessary for the court to charge on the issue of

intent in such case, nor is it necessary to prove such intent, any further than to prove that a per se deadly weapon was used. See Washington v. State, 53 Tex. Crim. Rep. 483, and other cases cited.

6.—Same — Charge of Court — On Aggravated Assault — Improperly Omitted.

Where the assault was shown to have been committed with a very small pocketknife with a blade less than two inches long, and the specific intent to kill was not otherwise shown, the court should have charged on the issue of an aggravated assault. See Art. 1149, Art. 1263, 1925 revision. Also see Branch's P. C., Sec. 2103; Dugan v. State, 199 S. W. 616.

Appeal from the District Court of Terry County. Tried below before the Hon. Gordon McGuire, Judge.

Appeal from a conviction of murder, penalty fifteen years in the penitentiary.

The opinion states the case.

*Bledsoe & Crenshaw* of Lubbock, for appellant. On failure to charge on manslaughter, appellant cites: Twyman v. State, 258 S. W. 480.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

MARTIN, JUDGE.—The offense is murder and the punishment fifteen years' confinement in the penitentiary.

The facts essential to a proper understanding of the issues of law made in the trial court and presented on this appeal are substantially as follows: Appellant and one Fisher had made a trade about which some dissatisfaction had arisen and on the day of the homicide appellant, in company with some others, went to the home of Fisher, to whom he was a comparative stranger, and there for the first time met Howard, the deceased, who was a brother-in-law of Fisher. In the discussion of the said trade an altercation arose between appellant and Howard, during which appellant cut Howard with the little blade of a knife, the blade being described as about one and seven-eighths inches long. Two of these wounds were superficial, but one of them struck the jugular vein and one the pleural cavity, from the effects of which Howard died about six hours later. An altercation at that same time and place also ensued between Fisher and appellant, in which appellant cut Fisher several times with a knife, with no fatal result, however. The testimony of Fisher tends to show an unprovoked assault upon both himself and Howard, while the testimony of appellant and those

who accompanied him makes a case of self-defense as against both Howard and Fisher, and the court recognized the existence of this issue by charging on self-defense in behalf of defendant as against both Howard and Fisher. The court also charged on murder and manslaughter, but did not charge on aggravated assault, nor did he require the finding of the existence of a specific intent to kill before a conviction was authorized in the two grades of homicide charged upon. The appellant testified he had no intention of killing deceased.

No exceptions are found in the record except to the charge of the court. Four questions pertaining to the charge have been presented in an able brief filed by appellant's counsel.

An exception was lodged to the court's charge because of its failure to limit the proof of the extraneous and collateral crime raised by the testimony as to the attack upon and the cutting of the witness, Fisher. Appellant was convicted for killing Howard and the attack upon Fisher was part of the res gestae of the transaction for which appellant was upon trial, and according to the appellant's theory. apparently, and which was recognized by the court in his charge, Howard and Fisher were acting together against appellant. Under these circumstances we do not think it was necessary for the court to limit the effect of the evidence as to the cutting of Fisher. It was part of the very transaction for which the defendant was on trial, and being part of the res gestae, would not have to be limited. Jenkins v. State, 128 S. W. 1113; Maxey v. State, 285 S. W. 617. The latter case goes exhaustively into the question. The case of McCall v. State, 14 Tex. Ct. of Apps. Rep. 353, and other cases cited by appellant are clearly distinguishable from the instant case. This testimony could be considered by the jury as tending to prove malice and the further material issue of an intent to kill, and it is never necessary to limit testimony which tends to prove the main issues in the case. Hudson v. State, 28 Tex. Crim. Rep. 340; Leeper v. State, 29 Tex. Crim. Rep. 69.

Paragraph Four of the court's charge was as follows: "The term 'malice' in its legal sense means the intentional doing of a wrongful act to another without legal justification. It is a state or condition of the mind showing a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken."

Appellant vigorously attacks this old and time-worn definition, claiming that it would apply equally to manslaughter, and asserts that even though the jury believed the appellant killed the deceased under the influence of sudden passion aroused by

an adequate cause, they could not under the definition given them by the court have acquitted him of murder. We think the first sentence in said charge is subject to the objection urged, but the last sentence contains a correct definition of malice aforethought, as first announced in a terse and lucid opinion by Judge Clark in the case of Harris v. State, 8 Tex. Ct. of Apps. Rep. 109, and which has been subsequently approved in many cases.

In Martinez v. State, 30 Tex. Crim. Rep. 129, the Court, speaking through Judge Davidson, says that either of the above definitions is correct, but in the Martinez case it does not appear that the issue of manslaughter was present in the case. There are similar statements with reference to these two definitions in other cases, notably Cain v. State, 42 Tex. Crim. Rep. 210, which was, however, by a divided court. Where manslaughter is an issue, the correct definition, in our opinion, is laid down by the court, speaking through Judge White, in Hayes v. State, 14 Tex. Ct. of Apps. Rep. 330, and which was subsequently followed by this court in Cooper v. State, 250 S. W. 185. A careful reading of the Hayes case, supra, will readily suggest to the trial court the error in the above paragraph, and we suggest that the first sentence in said definition be hereafter omitted in subsequent trials, though we do not think it presents a material error such as to require a reversal and only mention it because of the disposition we make of the case.

The substance and effect of appellant's next complaint is that the jury were nowhere required by the charge to find a specific intent to kill before a conviction could be had for either murder or manslaughter. As part of the law of homicide, Art. 1261 of the Penal Code provides: "The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the defendant; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, *unless from the manner in which it was used such intention evidently appears.*"

Where the weapon used is per se deadly, the law will presume an intent to kill and it is not necessary for the court to charge on the issue of intent in such case, nor is it necessary to prove such intent any further than to prove that a per se deadly weapon was used, but "if the instrument be one not likely to produce death, it is not to be presumed that death was designed unless from the manner in which it was used such intention evidently appears." We thus see that the law fixes the intent where the weapon is a per se deadly one, but will

leave the intent a question of fact for the jury to be inferred from the manner in which such weapon was used where it was less than per se deadly and that the intention to kill must evidently appear from the manner of such use before a conviction is authorized.   One of the chief defensive issues presented by the evidence detailed above was appellant's intent to kill.   The court gave Art. 1261 of the Penal Code, but he should have gone further, as held in the case of Griffin v. State, 40 Tex. Crim. Rep. 312, instructing the jury pointedly "that if they believe the weapon used was not likely to produce death, the jury could not presume that death was designed and that before they could convict appellant of either murder or manslaughter they must believe from the manner in which the weapon was used that it was evidently intended by appellant to take the life of deceased."   This court, speaking through Presiding Justice Morrow, in Hoover v. State, 87 Tex. Crim. Rep. 372, disposes of a contention similar to appellant's in this case in the following language:   "In instances in which under the evidence the instrument used in producing the homicide was not a deadly weapon, or in which there was an issue upon that point, this court with marked uniformity has held that upon appellant's request his theory of an absence of intent to kill should be put before the jury in a manner clearly informing them as to the law."   Citing Washington v. State, 53 Tex. Crim. Rep. 483; Crow v. State, 55 Tex. Crim. Rep. 202; Merka v. State, 82 Tex. Crim. Rep. 569.   This issue being nowhere submitted in the court's charge and the point being properly preserved in the trial court, it unquestionably presents error.

It is further insisted that the court should have charged upon aggravated assault.   We think that he should have not only submitted the issue of aggravated assault, but should have given Art. 1263 of the Penal Code in charge to the jury and have submitted aggravated assault in connection therewith. Sec. 2103 of Branch's Penal Code states the rule in cases of this character as follows:   "If the homicide was committed with a knife and the intent to kill is not shown beyond and without controversy, the charge of the court should inform the jury that the instrument by which a homicide is committed is to be taken into consideration in judging of the intent of the party killing, and that if the instrument be one not likely to produce death it is not to be presumed that death was designed unless from the manner in which it was used such intention evidently appears, and if the homicide occurs under the influence of sudden passion by the use of a knife not per se a deadly weapon

and the intent to kill is not shown beyond and without controversy, the court should charge Art. 1149 (now Art. 1263) on the grade of assault and battery raised by the testimony," and citing many authorities.

In the case of Dugan v. State, 199 S. W. 616, this court uses the following language: "The pocketknife was not per se a deadly weapon. Its character as such and the intent of appellant were, under Article 1147, P. C., questions of fact." The issue of aggravated assault was raised. To the same effect is Neal v. State, 266 S. W. 410; Mason v. State, 255 S. W. 986, and Beaupre v. State, 156 S. W. 625.

Cases involving this same question are constantly before this court and have uniformly met reversal where the facts are similar to the instant case and no charge on aggravated assault in connection with Art. 1263 of the Penal Code has been given. The almost monotonous recurrence of this question before this court has suggested that perhaps the trial judges and the profession are still in doubt as to the applicability of Arts. 1261 and 1263 of the Penal Code in homicidal cases, and this is our excuse for writing at some length upon an old and time-worn subject.

For the errors discussed above, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.